So our next case on the calendar, that's United States v. Soren. Okay, good morning Mr. Donovan. You've reserved two minutes for rebuttal, so that gives you eight out of the gate. You may proceed. Judge Sullivan, that is the way you pronounce my name, Donovan, that's right. We did that before, I remember. You know, I think the thing that bothers me most about this case... You know, I've been thinking about how I can best serve Suarez during the course of this argument. I think the thing that most bothers me about the case is that I've got a kid who's 21 years old, he's got one criminal history point. He's convicted of accessorial liability for murder. He drives the getaway car. And he's sentenced to a mandatory life sentence. Even though the district judge... I wish you'd assign me cases in which the district judges were less thoughtful and careful. I guess this district judge has moved on to a higher court now, but in his sentencing, the district judge clearly gives clues that if he were free to sentence as he wanted to, he might not well sentence this fellow to a mandatory memory. We were all district judges. You're preaching to the choir. We all experienced the difficulty of living under a regime that had minimum mandatories. When I started, non-discretionary guidelines and so forth. Our job, though, is to enforce the laws that Congress has written. He either had the discretion or he didn't. I don't win that issue. That's my fourth issue. You reserved it for future. What's bothering me is not that. That bothers me. In a case like that, there is no motion for a new trial. There is no motion for a judgment of acquittal. What would be the basis for those motions? It's a combination of ineffective assistance and the trial judges not when counsel walked in and said, listen, I'm not filing any motion for judgment of acquittal. I'm not filing any post-judgment motion. I'm not filing any sentencing memo because I don't think there's anything there. I think the judge should. To file an indisbrief? No, it wouldn't waste the trial judge's time. It wouldn't waste your time. I have two issues here. Those are perfectly good issues to raise. I think what you're saying, judge, is that no motion for a new trial is going to ever change your mind. No motion for a new trial is ever going to change your mind. He should have said, judge, I know that you ruled against me on the Batson. I've gotten the transcripts now. Take a look at this. When you said on the record, I tried to go back and forth with this guy. What you're saying is that the motion for a new trial should in effect have been a motion to re-argue the Batson issue? To reconsider the Batson issue, sure. That's what all my motions for a new trial said. Let's stay focused on what is the issue. You're saying that it was error for the judge not to assign new counsel, right? Right. You're now drifting into what sounds like an ineffective assistance of counsel argument. Even if we did that, prejudice is a requirement. You need to establish prejudice. You're saying that the judge should have relieved Carman as counsel because Carman didn't effectively make all the arguments you're making now on appeal? Or the judge just said to Carman, if you're not going to file a motion for judgment of acquittal, then you file an Anders brief. Where is there a requirement that Anders briefs be filed in the district court for motions not made in the district court? There's no federal rule. Anders is about appeals, right? I've seen Anders briefs filed in the district court, but there's no rule that an Anders brief has to be filed in the district court. There is a rule that someone should have counsel and that counsel should- Judge Bianco found that Carman did what he was supposed to do. He didn't find that he was ineffective. He didn't entertain whether or not new counsel should be appointed. And he concluded that that would only delay things further, and that your client would then get a new counsel on appeal and would be able to make arguments. And what I'm saying is before he just said, okay, don't file any motions. Fine. Don't file a motion for neutral. I'm going to sentence this guy to life imprisonment. Don't file a sentencing memorandum in which you make the kind of argument that I'm making before you. Don't do any of that. And I don't even care if you tell me why you're going to do it or not. I'm just saying that's wrong. I'm saying that Judge Bianco should have said if you're not going to file a motion- But you're saying it was an abuse of discretion for Judge Bianco not to relieve Carman and appoint someone else. I don't think I have to satisfy that standard. I think it's just wrong. I think it's just wrong. I think it's legal error. I don't think we could have this for too long to say that this is just wrong. We need to know what it is that he did wrong under what standards. In the same way that I agree with your Honor, that there's no federal rule of criminal procedure that says an attorney who notifies the court he's not going to file certain motions and he wants to withdraw because his attorney wants them, because his client wants him to file those motions, there's no rule that he has to file. In Anders' brief, there's also no rule that says it is an abuse of discretion for a judge not to require the attorney to file an Anders' brief. I think that it's an absolute component of effective assistance of counsel. The guy who's about to be sentenced to life comes in and goes, look, my attorney's not going to file a motion for a new trial. He's not going to file a motion for general acquittal. I want a new attorney. For the trial judge who hears that, he's got to do more than say, no, I'm not going to give you a new attorney. That's what I'm saying. But I'm also saying, you're right, I'm combining two arguments. So when the attorney doesn't do that, that's ineffective assistance of counsel. Okay, so what was the prejudice? Yeah, that's a good question. That's the question the government raises. Here's what I think. First, there's a special motion for a new trial. You get the transcripts. You show Judge Bianco, when you're talking about this juror as being not responsive, you're thinking of a different juror. That wasn't this juror. I don't think that you can sit there and say, Judge Bianco would not have reconsidered this. His mind was so made up. He had made his ruling. He would not make a different ruling. You know, it's going to happen. I seldom predict what the Court of Appeals is going to do. What was available at the end of the trial with respect to the Batson issue that wasn't before the court when the court ruled on it initially? Well, he could have gotten the transcripts. You've picked yours. They're all a big mass of people. Many people say different things. And I think Judge Bianco was thinking about a different juror when he made the ruling. That's what I think. He could have gotten the transcripts. What makes me say that? I don't know whether he had real-time transcriptions at his fingertips, but I would bet he probably did. But what makes you think that he wasn't on top of the situation? Because Juror 12 is the real big question here. And Judge Bianco said, oh, at Juror 12, I had to go back and forth with him, back and forth with him in order to get him to be forthright. That's what he said. And then when you look at the transcript of the questioning of Juror 12, you don't see that. He's thinking of some other juror. That's what makes me say that. But if they had made the motion for a new trial judge, if they had made that motion, then Judge Bianco could say, no, no, I wasn't at all mistaken about that. Or he could have said, yeah, maybe I was thinking about another juror, but still all the other factors. Look, a lot of us in this room were prosecutors. And every one of us who was a prosecutor knows you've got to be a really dumb prosecutor not to be able to find a reason to strike someone, even if that reason is based on race. And Juror 12, what did they say? They said his wife's on disability. His wife's involved. He's unemployed. Let me tell you, if this Juror 12 had been named Nelson Rockefeller Saltonstall, and his wife was on disability because she'd fallen from her horse during an equestrian contest, and he wasn't working because the trust fund spewed out enough money so he could keep the apartment in Manhattan and the house in the Hamptons going, there's no way that juror would have been excused. Well, it's not even clear to me that we even get to the second step of Batson because it's not clear to me that you established the first step, which is the articulation of the demonstration of race-based strikes. I mean, it seems like the record is not clear as to how many Hispanic jurors were on this veneer, how many were struck relative to the number that were there. Judge Bianco made that point, but I don't think the record is clear as to how many. How many Hispanic jurors do you think were on this veneer? Two. Two? The entire veneer? I mean, they struck the only two, he struck the only two Hispanic jurors that could have made it. I mean, this was a question that there was some dispute as to whether they were Afro-Hispanic or Afro-Caribbean jurors. There were four or five additional jurors who could speak Spanish and might have been Hispanic. And then when asked, so why do you think these other jurors are not Hispanic, trial counsel said, we don't know if they're Hispanic. They might have been. So you're insisting that there were two, but I don't see what the record suggests that there were two. It's a shame there wasn't a motion for a new trial, huh? Judge Bianco could have explained that in greater detail. I mean, if you want to make an ineffective assistance claim at some point saying that trial counsel did a bad job of preserving or making a record for a Batson challenge, I guess you can do that. But it seems to me what you're arguing on appeal are things that are not clear from the record. You said that there were two Hispanics on this jury, and I don't think that's consistent with the trial record. I think you're right in that it's hard to tell who exactly is Hispanic. I mean, the defense down below took the position that it was two. No, the defense below said we don't know whether these other people are Hispanic. They might have been. So, well, anyway, you have two minutes for rebuttal. Thank you, Ryan. When I come back, I'll talk about the other reasons that we should have had. Ms. Gupta, am I pronouncing that right? Gupta or Gupta? Gupta. Thank you. You may proceed. Good morning, Your Honors. And may it please the court. My name is Nina Gupta, and I'm an assistant United States attorney in the Eastern District of New York. I represent the United States. You were counsel below. I was not, Your Honor. The evidence at trial in this case established that the defendant, Jose Suarez, was a member of MS-13 and that he committed the violent charge acts in this case in furtherance of his membership of that group. The defendant's conviction should be affirmed. And I'll begin today with the third point that opposing counsel raised regarding whether the district court properly denied counsel's motion to withdraw prior to the sentencing and whether he made an error in not requiring counsel to file an Anders brief. Now, as an initial matter, the defendant fails to show any abuse of discretion by Judge Bianco for denying counsel's motion to withdraw prior to the sentencing. In addressing motions to withdraw as counsel, this court has made clear that district judges are granted great deference in this area. They can consider matters of judicial economy and judicial efficiency and whether a motion to withdraw would disrupt the prosecution of a suit. And that's exactly what Judge Bianco did. He cited that an extraordinary amount of time had already transpired since the trial ended in this case, which was in May 2019. And due to the COVID-19 pandemic, the sentencing did not take place. Judge Bianco made clear to the defendant that such an extraordinary amount of time had passed and it would only delay the defendant's sentencing and his appeal if he were to disrupt the suit at that case by appointing new counsel. He also made clear to the defendant that he would have new counsel for the appeal, which he obviously does. So there's been absolutely no prejudice here to the defendant. Now, on the Anders brief issue, I think the court has made clear that the logical justifications that support an Anders brief in the appellate court simply don't exist at the district court level. The district judge, Judge Bianco, presided over this trial. He's well-versed in these issues and he's able to rule on post-trial motions because he has a unique understanding of the record, having been there. Well, he also has the ability to ask direct questions to counsel. That's correct, Your Honor. And that brings me to the Batson challenge, where he made these credibility determinations. He had the benefit of being there in front of counsel. He was able to see their mannerisms and facial expressions and understand that they were giving credible, race-neutral explanations. Well, I think you've switched over now to Batson. I'm just saying with respect to the Anders brief, we asked for an Anders brief because we don't get to talk to counsel before they file a brief. But Judge Bianco was entertaining a motion to withdraw and request to appoint new counsel. And he's able to exchange directly with counsel whether or not they should stay on, whether the situation between the client and the lawyer has broken down so irrevocably that you need somebody new or what have you. He has the ability to do that in person. That's correct, Your Honor. And in this case, another reason that this is different from the Anders situation is that the defendant himself asked his attorney to withdraw. So this was not an Anders situation where defense counsel was stating that he needed to withdraw because he believed that there were no non-frivolous motions to be made. And finally, I think as the Court recognizes at this point, the lack of an Anders brief resulted in no prejudice to the defendant. The Court permitted the defendant to retain new counsel for appeal. He's done so, and he's been able to make the arguments that he wishes to advance. So from here, I'll move back to the Batson point. And I think defense counsel made clear that he believes that there was some abuse here related to Juror 12. Now, I think as the Court recognized, it's not even clear here that they met the first step of the Batson analysis. Now, jurors are not asked what racial or ethnic group that they affiliate with. The reason that they cited that they were Hispanic was because they said they spoke Spanish. But there were several other jurors who also stated that they spoke Spanish, and at least one of those individuals did end up on the jury. So it's not clear at the front end that there was no Hispanic individual on the jury. Additionally, there were two African-American individuals also seated on the jury. Now, as to Juror 12, the AUSAs stated multiple race-neutral reasons as to why they decided to strike that juror. They had concerns about the fact that the juror was unemployed, and that his wife was also unemployed. And as this Court has recognized, an individual's employment status, or lack thereof, is a race-neutral reason that an individual could strike a juror. I'm sorry? Well, Your Honor, this Court has recognized that, for example, in the United States v. Alvarado case, if an individual is employed as a social worker or a psychologist, that could be a reason that the government could feel that that particular juror may not be the right fit for a jury. It's a permissible race-neutral reason that parties may consider. I mean, I can see why the government might have concerns with a potential juror who worked in a particular kind of occupation, but that's not what I asked you. I asked you about someone who didn't have a job. If they don't have employment. Well, I think the reason that the AUSA cited is that they were worried about their ability to interact with other jurors. There was no other unemployed juror on that jury, which, again, speaks to the fact that this was a race-neutral reason that the AUSAs were considering. And I think the employment status... That seems pretty tenuous to me. Well, I think there were other reasons that the AUSAs presented as to Juror 12 as well. For example, he had a close family member who was a psychologist, and that's entirely consistent with the reasons that the AUSAs also struck another... Help me understand. Why did that matter? Well, Your Honor, I think the AUSAs stated that as to one juror, she had a degree in child psychology, and then this juror had a close family member who had a background in psychology. I don't understand the objection to having someone with a psychology degree on the jury. Again, Your Honor, I think it's simply a status of employment that the AUSAs were concerned about, just as... There could be a variety of reasons why an AUSA would find that someone with a background in psychology might, for instance, have some sort of bias or bias in favor of the defendant. And similarly, the AUS... Those are just assertions. There just doesn't seem to be any logical connection between the two sides of that proposition. Well, Your Honor, I think we also see that with... I'm talking about psychology that is disqualified. Your Honor, I think it's similar to the Alvarado case where the AUSA found that they didn't want a social worker on the jury. I think there could be a variety of things that could be in those individuals' backgrounds that the AUSAs don't find to be favorable to the government for the jury, and they are entitled to make those determinations. The important point is that those things have nothing to do with race. And the other thing that I would say is that the AUSA, the AUSA has a very clear employment status related to working with juveniles. I mean, it's a little troublesome. You can't give, at least for me, a reasoned explanation about the relationship between being a psychologist, having psychological training, and sitting on the jury. To me, it's just all ips and dicks, and it's true because you say it. You've had months and months to review the transcript. I mean, it's a little bit troublesome. Well, Your Honor, again, I can't speak for what was going through trial counsel's head at that point, but I can say that they articulated both that a degree in child psychology and a close family member being involved in child psychology, and they articulated that individuals who work in psychology might have come across juveniles who are in this case, might have come across people with mental health issues, which could have been an issue in this case. Alcohol addiction, which was related to one of the defenses that the defendant was putting forth, was intoxication. So you could see a variety of reasons why a background in psychology might be unfavorable to the government. But the important point here is that Judge Bianco found that those reasons were true. Your colleague also identified the juror's wife's disability. What's the argument there for that being a disqualifier? Your Honor, I think the AUSA was getting at the point that the juror himself was unemployed, and he had a wife on disability, which meant she also was not working. And so the idea was that neither of these individuals are working, and he thought that they might have some trouble interacting with other jurors. And again, there was no other unemployed individual on the juror, which supports that that was a credible and race-neutral explanation. Why would the fact that someone was on disability had a relative, a close family member on disability impact one's ability to interact with other people? This doesn't make any sense to me. Well, Your Honor, I don't believe it was the fact that she was on disability. I think it again goes... What was the fact? What was of significance? I think it was again the fact that you have two people in this nuclear family who both are not working. And on top of that, they have a son who's a psychologist. And again, for the reasons we discussed, the AUSAs seem to be striking individuals who had backgrounds in psychology, which again is a race-neutral reason. If you're going to rely on a veneer member's unemployment status, does the complexity of the trial that's about to happen matter? It does, Your Honor. For example, again, they struck two jurors because of their background in working at a juvenile facility and on New York State parole. And their concern was again that both of those jurors might have worked with juveniles on parole or in a facility. And this specific trial involved individuals who were potentially at juvenile facilities at some point. So that employment status was incredibly relevant to this case. Unemployed. So in other words, if it's a possession with intent to distribute case, one count, and you've got an unemployed veneer member, does it matter less in that case and more in a case where you've got a complicated set of accounts? Your Honor, I think it would depend on the defendant himself. Here there was no indication as to the defendant's employment. It's possible that they thought another individual who's unemployed might sympathize with the defendant. So I think it would really depend on the factors surrounding the defendant as to whether unemployment would be something that AUSAs would look for in every case or just in this type of case. And again, I think it could also speak to if someone has not been working for quite some time, do they have the decision-making abilities in a complicated case? So it is something that could come up more in a case like this, which involved nine fairly complicated counts. Wait, you're saying that someone who has not been working is likely to have difficulty following evidentiary presentations and jury charges? No, Your Honor, not at all. My point was that that could bear on it. That could be something that AUSAs might consider. But again, these are all race-neutral reasons that someone might consider unemployment as relevant. All right. We'll now hear from Mr. Donovan for two minutes or so. Thank you, Your Honor. I just don't think unemployed people are dumb, and I don't think unemployed people don't get along with their neighbors very well. Well, the law seems to be that it doesn't have to be a persuasive reason, and it can even be silly as long as it is not pretextual. Sure. How about the fact that minority people have a higher unemployment rate than white people? How about it? How about it? You're asking me a question? It's a rhetorical question, if you may please. The government, Ms. Gupta, would have struck all my private equity friends who don't work anymore. And they probably don't get along with people very well either. They're probably snotty guys that you wouldn't want to drink a beer with at all. Judge, I think your point about the district court judge has an opportunity to talk with counsel is a good one, and you don't, except when I get a chance to talk to you. But the problem with it is I can't remember anywhere in that transcript where Judge Bianco actually says to him, can you tell me why you're not going to make that motion? Have you explored this point? Do you think it's appropriate for judges to say what motions are you going to make and why, and why aren't you making certain motions? I think where a defendant has said, Judge, I need a new attorney because this attorney will not file motions that in any other murder case is going to get filed. I mean, I can't, I've never filed, I've never done a murder case in which I haven't filed a motion for a new judgment of acquittal. And I don't know if you've ever had anybody in the district. But are you saying that it's per se ineffective assistance to not file one in a murder case? I mean, that seems to be what you're saying. It comes close to what I'm saying. But this is not an ineffective assistance argument you're making. You're making an argument about an abuse of discretion by the trial judge for not appointing new counsel. And for that, once that counsel, once that counsel was kept, for that counsel not to have filed those motions. I mean, it's a combination of those things. I wasn't sure, are you not asking us to say anything about ineffective assistance of counsel at this point in these proceedings? I guess it goes to what I'm asking you to do. What I'm asking you to do is send it back to the district court, appoint, with instructions to appoint new counsel, order that counsel to file a motion of judgment of acquittal motion for a new trial and a sentencing memo. And if he's not going to do it, to give the reasons why he's not. But wait, I mean, you're basically saying that we should remand it, direct Judge Bianco to appoint new counsel, and then that counsel should make the arguments you've made on appeal, basically, right? Anything else he can think of, yeah. Okay, but I mean... But Judge, I know where you're going on this, and you shouldn't go there, because this case would be different on appeal if a motion for a new trial had been made. Judge Bianco would have had a chance to think about it, and maybe would have made a different decision. And if he didn't make the different decision, let me take the part of it that's most difficult for me. The part that's most difficult for me is, as you said, Judge, the sentencing. You know, I say that's a violation of the Eighth Amendment, and you can't fine for me on that, because another panel has said no. The Supreme Court has said no. Judge Bianco would have had to have said no. But it's not right to say there's no prejudice. Judge Bianco would have said no in a really interesting memo in which he said the same kind of things you said, Judge. I really don't want to sentence this guy to life, but I have to, because it's the law. If I were going to sentence him, I might have taken off a little for this, a little for this, a little for this, give him 40 years instead of life. If I had that, if I had that, my task would be, maybe I could get one of you to concur, saying, look, we have to do this, but I don't think it's right. Then maybe I could make a motion for rehearing a bonk, and then when I go to the Supreme Court, I could say, look, the learned judge in this case said, I really don't like sentencing. It would have been different. I'd have a different record here. So anyway, for all those reasons, I thank your honors, and I hope you'll reverse the judgment. All right. Well, thank you, Mr. Donovan. Thank you. Thank you both. We gave you a hard time. We will reserve decisions.